COSSETT *v.* O'RILEY.

1. REAL PROPERTY—RECORD—NOTICE—MORTGAGES.

   The filing of a *lis pendens*, in a suit to foreclose a mortgage on realty, is notice of the suit to an owner who obtained title after the execution of the mortgage.

2. SAME — FRAUD —VENDOR AND PURCHASER — LAND CONTRACT— MERCHANTABLE TITLE.

   A vendor of real property who agrees to convey a merchantable title is not relieved of the effect of false representations concerning the title, although he supposes the statements to be true.

3. SAME—FRAUD—RESCISSION.

   But if he is able to make the title good and offers to do so, the contract is not subject to rescission for the fraud.

4. SAME — DAMAGES FOR FAILURE TO PLACE VENDOR IN STATU QUO.

   The vendor, being entitled to be replaced *in statu quo*, was entitled to have the amount of plaintiff's recovery decreased by such damages as he could show were sustained in purchasing a portion of the property, which he contracted to convey to the plaintiff, from a third party as a part of the transaction, where he had tendered a warranty deed and the defect in title was not pointed out to him.

Error to Lenawee; O'Mealey, J.   Submitted November 12, 1909.   ( Docket No. 58.)   Decided March 5, 1910.

Assumpsit by Emery W. Cossett against John O'Riley, Sr., for money paid upon a land contract.   A judgment for plaintiff is reviewed by defendant on writ of error. Reversed.

*Fellows & Chandler*, for appellant.

*Arthur P. Hicks* and *Smith, Baldwin & Alexander*, for appellee.

MOORE, J.   The parties entered into a land contract on

the 14th day of October, 1903, by which the plaintiff agreed to purchase the defendant's farm for the sum of $4,200. Two hundred dollars was paid at the time of the execution of the contract.  Plaintiff attempted to rescind this contract on the ground of fraud, and brought this action to recover the amount paid by him on the contract, with certain expenses incurred by him.  He obtained a judgment, and the case is brought here by writ of error.

It is the claim of plaintiff that defendant represented that a lake which was on the farm did not overflow the land; that there was a tile drain in a ravine on the farm; that the house was in good condition, excepting the kitchen which needed repairs; that the title was good; and that these statements were untrue and fraudulent.

With reference to the state of the title, the testimony tends to show that when Mr. McCullen was the owner of this farm he executed a mortgage for the sum of $2,350 to Levi R. Peirson, who transferred it to his typewriter, who transferred it to an attorney of Hillsdale, who transferred it to a banker of that city.   After the death of Mr. Peirson, his widow, Mrs. Peirson, filed a bill to set aside these transfers, and also to declare a lien on some real estate purchased by Mr. Peirson for his typewriter.  At the time of filing this bill, notice *lis pendens* was filed in the office of the register of deeds.  Upon the hearing of the case her bill was dismissed, and she appealed to the Supreme Court.  Pending the appeal it was agreed between the parties to that suit, acting through their respective solicitors, that the holder of the mortgage should collect, and if Mrs. Peirson succeeded he should respond in a money decree.  (There is no proof that plaintiff knew of this agreement when he attempted to rescind.)  He thereupon collected the mortgage and discharged the same of record.  The arrangement for collecting the money by the banker was not in writing, but was testified to by one of the solicitors for the defendants in the *Peirson Case.* The *Peirson Case* was still undisposed of by this court at the time of the controversy involved in the present case.

The solicitors for Mrs. Peirson were the attorneys for Mr. O'Riley, in the negotiations between him and plaintiff when the plaintiff declined to carry out his contract for the purchase of the farm. The case was finally disposed of in this court and is reported in 137 Mich. 158 (100 N. W. 458), where the decree of the court below, dismissing the bill of complaint, is affirmed.

It is claimed by defendant that Mr. O'Riley, through his son, offered to perfect the title, which offer the plaintiff declined. Plaintiff disputes this. The contract above referred to contained an agreement to convey a good title to the land in question. At the lake, a portion of which was on the farm, was an abandoned resort property, owned by one Perkins, containing about three acres of land with a right of way across the farm, which was not fenced from the public highway. It was agreed defendant should purchase this resort property of Perkins for $300 and resell the same to plaintiff at the same figure. Defendant did purchase it, and he and plaintiff a few days later entered into a written contract for its purchase by plaintiff in accordance with the agreement. It is the claim of defendant that this purchase was a part of the same transaction involved in this suit. The premises were in possession of a tenant at the time the contract was made, plaintiff bought out the tenant, installed his son-in-law on the farm, but did not move there himself until the March following. Soon thereafter he notified the defendant he would not take the farm, claiming to rescind because of the representations above referred to, which he claimed were false and fraudulent. The defendant claims that plaintiff did not specify what defect there was in the title; did not so claim until his case was closed and defendant was nearly through with his case, when, upon the case being reopened, he so claimed. The defendant claims that he made no untruthful statements, and that he offered to, and was in a position where he could, perfect any defect in the title; the only claimed defect in the title being the notice *lis pendens.*

Defendant discusses the questions involved under the following heads:

*First.* Title.

*Second.* Did the representations with reference to title which were afterwards embodied in the contract, if made in good faith, constitute actionable fraud ?

*Third.* Abatement from plaintiff's claim by reason of his inability to place defendant *in statu quo.*

Upon the question of title he insists that the filing notice *lis pendens* in the *Peirson Case* was not constructive notice of that suit so far as the mortgage was concerned. We will content ourselves with saying we think this contention was not well taken. It was the claim of defendant that he tendered a good deed of the premises and advised plaintiff that if there was any apparent defect in the title he would cure it.

The court was asked to charge as follows:

"(19) I charge you that if the defendant offered to perfect the title to these premises, and you further find that the defendant could have perfected the title, then and in that case the plaintiff could not rescind the contract for such defect."

"(22) If Mr. O'Riley believed he had a good title to the premises in question, and stated to Mr. Cossett before the contract was made that his title was good, that statement was not such a fraudulent statement as would be fraud, and permit plaintiff to rescind the contract for that reason, and even though you should find that he did make such statement as to his title, and it was not true, it would not be fraud and could not avail plaintiff in this action unless defendant actually knew that such statement was false."

The court declined to give either of these requests and charged the jury as follows:

"(2) If you find from the evidence in this case that, at the time the parties to this suit met at the bank in Hudson, the plaintiff was ready, willing, and able to carry out and perform the contract on his part, you are instructed that he was entitled by the terms of the contract to a good and sufficient warranty deed of the prem-

ises described therein, conveying to him a good, merchantable title to said lands, free and clear of and from all liens and incumbrances, up to and including that date.    By a 'merchantable title' is meant one that would pass current and without question among purchasers of ordinary prudence and caution, and the plaintiff was not bound to accept any other or different title than the one required by the contract.

"(3) If you find from the evidence in this case that, at the time the defendant bought the farm mentioned in the declaration, there was a mortgage of $2,300 upon it, held by Levi R. Peirson, and that he afterwards paid said mortgage and procured a discharge thereof from one Chauncey Cook, and that Mr. Cook's title to the mortgage depended upon the validity of an assignment of the same, executed by said Peirson to Miss McNeal, and from Miss McNeal to Mr. Barre, and from Mr. Barre to Mr. Cook, and that there was a suit then pending on appeal and undetermined in the Supreme Court as to the validity of the assignment from Mr. Peirson to Miss McNeal, you will then determine from the evidence and the instructions which I have given you whether the defendant, at the time of the meeting in the bank, tendered to the plaintiff a good, merchantable title to this farm, and one which he was bound to accept as a performance by the defendant of his obligation under the contract to the plaintiff.   If you find that he did, then upon that branch of the case the plaintiff cannot recover in this suit; but, if you find he did not tender a good merchantable title to the plaintiff on that occasion at the bank, then upon that branch of the case the plaintiff would be entitled to recover."

We do not think, under the facts disclosed by this record, that defendant was entitled to have his 22d request given, because defendant had agreed in his contract that plaintiff should have a good title.   On the other hand, the defendant was entitled to have his theory of the case presented.   We have already referred to his claim that the defect in the title was not pointed out; that he had tendered a warranty deed; that he had offered to correct any apparent defect in the title; and that he was in a position to do so.   There was testimony tending to support each of these claims, so that we think his 19th request to charge should have been given.

The court charged the jury as follows:

"Gentlemen, there has been some testimony given in this case with reference to a right of way and lake resort property adjoining this farm, and of an agreement entered into between the plaintiff and the defendant some time after this contract for the sale and purchase of this farm was executed by the parties to this suit. I do not think from the evidence in this case that that contract is sufficiently connected with the contract for the sale and purchase of this farm that it can be said to be a part of the transaction, and that there is no evidence in this case that Mr. O'Riley, in purchasing the right of way and lake resort property and then afterwards selling the farm in two parcels and including the right of way and lake resort property in the sales, did not receive by way of added value to the farm as much in value as he paid for it, and I do not remember any evidence in the case which tends to show that he suffered any loss or damage by reason of the failure of the plaintiff to buy that right of way and lake resort property of him for the same price that he paid for it, and I do not think that you should consider in your deliberations that transaction in connection with your investigations and determinations of the issues in this case."

We have already referred to the claim of defendant as to this part of the transaction. He claims that his purchase of the resort property and the agreement of the plaintiff to take it off his hands were part and parcel of the transaction, whereby plaintiff agreed to buy the larger parcel, and that plaintiff could not rescind the land contract without placing defendant *in statu quo*, and that to do so he was bound to save defendant from any loss growing out of the purchase of the smaller tract. There was testimony tending to support this claim. Plaintiff testified:

"We went back to town and went into the office back of Boies Bank. I wasn't going to take it after we got in there. Defendant told me I didn't have to keep that summer resort open at the road. Mr. Bennett said I did have to keep it open at the road. Mr. Bennett said there was no use trying to lead a fellow in the dark, as it did have to be kept open. We finally entered into a contract.   *

\* \*   After I made the contract with defendant, I went North, and was North about two weeks, and stopped in Hudson and finished up the contract we made before.

"*Q.* Made another contract?

"*A.* Yes, and finished up the bargain we made before, about the same business.   Entered into a written contract with defendant for the summer resort property.   At the time I made the first contract, on the 14th of October, I requested defendant to buy what was called the Perkins property, this summer resort.   I wouldn't have took the other after I found out this right of way had to be kept open and the lane kept fenced, and defendant agreed when I bought the other to buy that.   I found out there was a right of way across this farm to the resort property before I made the contract with defendant, and I insisted that defendant should buy the resort and that right of way.   I agreed to give him $300 for that property.   It was to be paid the same date as the other payments."

There is other testimony which, taken with this, fairly raises the inference that plaintiff would not have bought the farm if he could not also buy the resort property, and thus get rid of the right of way over the farm, and a like inference could be fairly drawn that his agreement to buy both of these tracts was what influenced defendant to buy the resort property.   In any event, the evidence did not authorize the taking of that phase of the case from the jury in the manner in which it was done.

Judgment is reversed, and new trial ordered.

OSTRANDER, HOOKER, BROOKE, and BLAIR, JJ., concurred.